UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMILEH B., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br>    ACTING COMMISSIONER OF SOCIAL SECURITY,[1] <br><br> Defendant. | No. 20 CV 2481 <br><br> Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jamileh B. brings this action under 42 U.S.C. § 405(g) for judicial review of the Social Security Administration's (SSA) decision denying her application for benefits. For the following reasons, the Court grants plaintiff's request to reverse the SSA's decision and remand this case to the agency [15],[2] denies the Commissioner of Social Security's request to affirm the SSA's decision [20], and reverses the SSA's decision.

## Background

In early June 2015, plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging an onset date of August 14, 2012. [14-3] 204. Plaintiff's claims were denied initially and on reconsideration. [*Id.*]. Plaintiff requested a hearing, which was held by an administrative law judge (ALJ) on August 3, 2017. [*Id.*]. In a decision dated October 25, 2017, the ALJ ruled that plaintiff was not disabled. [*Id.*] 211. The Appeals Council denied review on June 8, 2018, making the ALJ's decision the agency's final decision. [14-1] 1-4. *See* 20 C.F.R. §§ 404.955, 404.981.

---

[1] In accordance with Fed. R. Civ. P. 25(d), Kilolo Kijakazi, the Acting Commissioner of Social Security is substituted as the defendant in this case in place of the former Commissioner of Social Security, Andrew Saul.

[2] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, with the exception of citations to the administrative record [14], which refer to the page numbers in the bottom right corner of each page.

Plaintiff timely appealed to the U.S. District Court for the Northern District of Illinois. *See Jamileh B. v. Berryhill,* 1:18-cv-5306 (N.D. Ill. Aug. 3, 2018) [1]. The Commissioner filed an agreed motion for reversal with remand for further administrative proceedings, which the district court granted. *Id.* [26], [28]. The district court instructed the Commissioner on remand to: (a) reconsider the functional capacity evaluation and certain medical opinions; (b) reconsider plaintiff's ability to perform her past relevant work; and (c) offer plaintiff the opportunity to complete the administrative record resolving the above issues, and issue a new decision. *Id.* [28].

Plaintiff reappeared for a second hearing, which was held by an ALJ on October 28, 2019. [14-11] 1019. In a decision dated December 26, 2019, the ALJ on remand ruled that plaintiff was disabled for a closed period from April 23, 2015, through December 13, 2017. [*Id.*] 1033. The ALJ ruled that plaintiff was not disabled, at any time, between December 15, 2017, and December 31, 2017, the latter date being plaintiff's date last insured ("DLI"). [*Id.*] 1038. Plaintiff did not file written exceptions with the Appeals Council and the Appeals Council did not review plaintiff's case on its own within sixty days after the date of the ALJ's decision, making the ALJ's decision the agency's final decision. [14-11] 1015. *See* 20 C.F.R. §§ 404.955, 404.981.

Plaintiff timely appealed to this Court. [1]. The Court has jurisdiction to review the Acting Commissioner's decision under 42 U.S.C. § 405(g).[3]

## Legal Standard

Under the Social Security Act, disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).

To determine whether a claimant is disabled, the ALJ conducts a sequential five-step inquiry: (1) whether the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any listed impairment; (4) whether the claimant can perform his past relevant work (i.e., the claimant retains the residual functional capacity (RFC) to perform his past); and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience (i.e., able to perform any other work existing in significant numbers in the national economy). *See* 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a). "An affirmative answer leads either to the next step, or on Steps 3 and 5, to a finding that the claimant is disabled. A

---

[3] The parties have consented to the exercise of jurisdiction in this case by a United States Magistrate Judge. [8].

negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that the claimant is not disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

"The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence." 42 U.S.C. §405(g). Substantial evidence is a standard that "requires more than a mere scintilla of proof and instead such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walker v. Berryhill*, 900 F.3d 479, 482 (7th Cir. 2018). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019)). But the standard "is not entirely uncritical. Where the Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Brett D. v. Saul*, No. 19 C 8352, 2021 WL 2660753, at *1 (N.D. Ill. June 29, 2021) (internal quotation marks and citation omitted); *see also Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) ("When an ALJ recommends that the agency deny benefits, it must first 'build an accurate and logical bridge from the evidence to the conclusion.'") (internal citation omitted).

### The ALJ's Decision

The ALJ awarded plaintiff benefits in part, finding she was disabled only from April 23, 2015, through December 13, 2017. [14-11] 1020. Relevant to this appeal, the ALJ found that during that two-year, seven-month period plaintiff had the following severe impairments: a right and left shoulder injury and diabetes; plaintiff's bilateral shoulder conditions medically equaled listing 1.02(b) until May 30, 2016; and between May 31, 2016, and December 13, 2017, plaintiff had the ability to perform light work with some limitations. [*Id.*] 1021, 1031. Specifically, the ALJ found plaintiff could occasionally: flex, extend, and rotate the cervical spine, reach overhead bilaterally, crouch, and squat. [*Id.*] 1031. The ALJ also stated plaintiff could frequently reach in all other directions and perform fine and gross manipulation, bilaterally. [*Id.*]. Finally, the ALJ found, plaintiff could never climb ladders, ropes, or scaffolding. [*Id.*]. The ALJ found that based on plaintiff's RFC there were no jobs that existed in significant numbers in the national economy that plaintiff could have performed and therefore, concluded plaintiff was disabled. [*Id.*] 1033. The ALJ noted even if plaintiff had the RFC to perform a full range of light work, she was disabled by direct application of the Medical-Vocational Guidelines. [*Id.*].

The ALJ concluded, however, that plaintiff's disability ended December 14, 2017, due to medical improvement. [*Id.*] 1034. Specifically, the ALJ found that while plaintiff could still only perform light work, she no longer had limitations in flexing, extending, or rotating her cervical spine, and therefore could perform jobs including the semiskilled occupations of timekeeper, pricer, and contract clerk. [*Id.*] 1035-38. In support of this RFC finding, the ALJ cited treatment records showing plaintiff had

no musculoskeletal abnormalities or complaints during appointments in November and December 2017. [*Id.*] 1034. The ALJ also emphasized that on December 13, 2017, plaintiff completed an exercise stress test which demonstrated plaintiff had normal extremities. [*Id.*]. The ALJ noted that on April 28, 2018, plaintiff underwent a rheumatology evaluation which showed plaintiff having a full range of motion, intact motor strength, intact grip strength, and, again, no shoulder or musculoskeletal abnormalities. [*Id.*] 1034-35. While the ALJ acknowledged "there were few objective findings during this time," referring to the timeframe of December 13, 2017, to December 30, 2017, the ALJ nonetheless concluded that plaintiff's "history of multiple shoulder surgeries supports these ongoing limitations, but does not justify greater limitations." [*Id.*] 1035-36.

The ALJ's RFC analysis considered the physical capacity questionnaire conducted by treating rheumatologist Dr. Diana Sandler, who recommended significant restrictions. But the ALJ ultimately gave Dr. Sandler's opinion no weight. [*Id.*] 1036-37. Dr. Sandler stated plaintiff could use her hands to grasp, turn, and twist objects, her fingers to finely manipulate, and her arms to reach overhead only 10% of the time during an 8-hour workday and that plaintiff would be absent from work four days per month because of her impairments. [14-19] 1869-70. The ALJ found that although plaintiff began to "show more objective signs of arthritis or fibromyalgia in 2018, this was after the [DLI]" and evidence prior to the DLI shows plaintiff had "relatively intact functioning, which does not support" Dr. Sandler's significant limitations. [14-11] 1036-37. The ALJ also considered plaintiff's testimony that she continued to have debilitating pain in her shoulders, as well as arthritis or fibromyalgia that prevented her from working. But the ALJ ultimately found plaintiff's statements inconsistent because the record evidence did not show plaintiff had significant functional limitations prior to plaintiff's DLI. [*Id.*] 1035. While the ALJ acknowledged plaintiff's complaints of shoulder pain in 2016, she pointed out that plaintiff stopped describing shoulder pain to her physicians in 2017 and examinations in 2018 showed no shoulder or musculoskeletal abnormalities. [*Id.*].

At Step Five, the ALJ found that as a former mortgage loan processor, a skilled position, plaintiff acquired skills that would transfer to the semiskilled job of a timekeeper, pricer, or contract clerk with little, if any, adjustment given how similar these jobs are to a mortgage loan processor. [*Id.*] 1038. The ALJ, referring to the vocational expert's ("VE") testimony, listed the specific skills associated with the mortgage loan processor position, those being "verbal recording, record keeping, use of office equipment, [and] verifying information." [*Id.*] 1037. However, the ALJ did not explain how the listed skills associated with a mortgage loan processor aligned or resembled the skills of any of the three positions the VE identified. [*Id.*] 1038.

4

**Discussion**

Plaintiff argues the ALJ's decision makes two reversible errors: (1) the ALJ failed to apply a "disability freeze" to her disability insurance benefits and (2) the ALJ's findings related to whether plaintiff has transferable work skills are unsupported by substantial evidence. [15] 8, 11-13. The Court agrees with plaintiff and finds that, due to errors made by the ALJ, substantial evidence does not support the decision to deny benefits and that the case must be remanded for further proceedings.[4]

### I. The ALJ's Failure to Shift Plaintiff's Date Last Insured Based on Established Period of Disability is Not Harmless Error.

Plaintiff argues that after the ALJ found plaintiff disabled from April 23, 2015 to December 13, 2017, a period of thirty-one months, the ALJ should have shifted her DLI based on this established period of disability, also known as applying a "disability freeze." [15] 8. Because of that established period of disability, plaintiff asserts her insured status should have been extended through September 2019. [*Id.*] 9. Plaintiff alleges that during this period of extended coverage, she developed hand impairments that make her unable to perform jobs the ALJ identified at Step Five which require frequent hand use. [*Id.*] 10. Plaintiff argues the ALJ's failure to apply a freeze and evaluate plaintiff's subsequent impairments in calculating plaintiff's RFC is thus not harmless error and is outcome-determinative. [*Id.*]. The Commissioner responds that the ALJ's failure to apply a disability freeze is harmless because the ALJ discussed medical evidence of plaintiff's condition after her DLI, including plaintiff's hand pain allegations, and nonetheless concluded plaintiff was not disabled after December 14, 2017. [20] 6-7.

A disability freeze preserves a plaintiff's insured status during a period of disability. Program Operations Manual Sys. ("POMS") DI 25501.240 Disability Freeze & Established Onset, Soc. Sec. Admin. The purpose of a disability freeze is "[t]o eliminate the years of low earnings (due to a worker's disability) from the computation of benefits and to preserve the worker's insured status." POMS DI 10105.005 Eligibility for Disability Ins. Benefits (DIB) or the Disability "Freeze," Soc. Sec. Admin; *see also Ransom v. Bowen*, 844 F.2d 1326, 1331 (7th Cir. 1988). Freeze periods protect insured status by reducing the number of quarters needed for insured status or prolonging the period for which disability insured status is met. POMS RS 00605.215(B) Effects of a Period of Disability, Soc. Sec. Admin. To qualify for a disability freeze the claimant must: (1) be insured as required by the disability provisions; (2) file an application for disability determination; (3) be under a disability as defined by the statute; and (4) wait five months. POMS DI 10105.005.

---

[4] Because these issues are dispositive, the Court need not address plaintiff's other arguments.

Plaintiff met the insured status under the disability provisions through December 31, 2017, which is the date the ALJ used as plaintiff's deadline for establishing disability. [14-11] 1049. The ALJ evaluated plaintiff's impairments up to this date to determine plaintiff's RFC and whether plaintiff could perform her past relevant work or other work. [*Id.*] 1035-37. If the ALJ had applied a disability freeze, plaintiff would have had until September 2019 to establish disability. *See Ford v. Colvin*, 1:14–CV–01046–RGA, 2015 WL 4608136, at *6 (D. Del. July 31, 2015) (finding if the ALJ applied a disability freeze plaintiff would have an additional two years beyond plaintiff's date last insured to establish disability).

The Court concludes that the ALJ's failure to apply a disability freeze to extend plaintiff's DLI through September 2019 is not harmless error. If plaintiff had until September 2019 to establish her disability, the ALJ would have had to "evaluate all relevant evidence" when determining plaintiff's RFC through this period. *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012). While the ALJ considered evidence of plaintiff's current functioning, that is, evidence from after the expiration of plaintiff's insured status on December 31, 2017, the administrative hearing testimony and the ALJ's decision make clear the ALJ considered this evidence only to determine whether an impairment existed *prior* to plaintiff's DLI. [14-11] 1035-37, 1066. The ALJ's consideration of such evidence for this purpose is ordinarily appropriate. *See Parker v. Astrue*, 597 F.3d 920, 924-25 (7th Cir. 2010) (reversing where the ALJ did not consider evidence regarding claimant's current condition to determine the severity of plaintiff's impairments before her insured status expired). However, evaluating evidence post-dating a plaintiff's DLI for this purpose is distinct from evaluating evidence to determine plaintiff's impairments and RFC at the outset, that is, to determine whether plaintiff is *currently* disabled. *See Schloesser v. Berryhill*, 870 F.3d 712, 717-18 (7th Cir. 2017).

The Court concludes that had the ALJ applied the disability freeze and evaluated evidence related to plaintiff's hand impairments—evidence post-dating December 31, 2017—in crafting plaintiff's RFC and identifying jobs plaintiff could perform, the ALJ could have concluded plaintiff was disabled. First, evidence of plaintiff's hand impairments through September 2019 likely would have affected the ALJ's identification of impairments at Step Two of her analysis. During the second administrative hearing, plaintiff's counsel pointed out that after plaintiff's DLI, treating rheumatologist Dr. Sandler evaluated plaintiff noting "arthritis, pain in the hands, swelling, [and] stiffness." [14-11] 1065. The ALJ responded, "That sounds like a new impairment, the arthritis in the hands," adding that plaintiff's "treatment started . . . after the [DLI] . . . in 2018." [*Id.*] 1066. The ALJ's testimony indicates that had plaintiff's DLI been extended through at least 2018, when plaintiff began treatment for rheumatoid arthritis symptoms, the ALJ would have considered arthritis among plaintiff's impairments. [14-19] 1865. The ALJ in turn would have had to consider that impairment in determining plaintiff's RFC at Step Four, regardless of whether the ALJ would conclude the impairment was severe. *Judy M.*

6

*v. Kijakazi*, 21 C 2028, 2023 WL 2301448, at *4 (N.D. Ill. Feb. 28, 2023) ("[w]hen determining a claimant's RFC, an ALJ must consider all medically determinable impairments, including those that are not severe" and "must also consider all the effects and limitations resulting from those impairments.")(citing *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008); *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014)). A decision that fails to consider evidence relating to plaintiff's hand impairment, even if that evidence is "very sparse," would be cause for remand. *Herron v. Shalala*, 19 F.3d 329, 333-34 (7th Cir. 1994) (reversing where ALJ did not explain the rejection of claimant's hand pain allegations and failed to consider evidence related to claimant's hand impairment).

Second, the ALJ's consideration of evidence related to plaintiff's hand impairment post-dating December 31, 2017, would undoubtedly impact Step Five of her analysis. During the second administrative hearing, the ALJ asked the VE several hypotheticals to assess whether plaintiff could perform her past work as a mortgage loan processor or other work. [14-11] 1062, 1069-70, 1074. In each hypothetical the ALJ posed, the individual's RFC included frequent fine and gross manipulation. [*Id.*]. Based on the ALJ's hypotheticals and plaintiff's transferable skills, the VE concluded plaintiff could work as a timekeeper, pricer, or contact clerk. [*Id.*] 1071. The VE also testified that the jobs he identified would involve computer typing and require frequent reaching, handling, and fingering. [*Id.*] 1072-73. The ALJ then concluded, in her decision, that plaintiff could perform these three positions. [*Id.*] 1037-38. Considering evidence of plaintiff's hand impairment, particularly plaintiff's hand pain allegations and her rheumatologist's evaluation which stated plaintiff could use her hands to grasp, turn, and twist objects and fingers to finely manipulate only 10% of the time during an 8-hour workday, the ALJ would have, at a minimum, been required to address the VE's testimony that the identified positions required frequent handling and fingering. [14-19] 1814, 1869-70. *See Martinez v. Astrue*, 630 F.3d 693, 696-97 (7th Cir. 2011) (reversing where ALJ failed to "mention the difficulty that plaintiff has in using her hands mak[ing] the ALJ's suggestion that she could be a 'hand assembler' amount to a bad joke."); *see also Smith v. Apfel*, 231 F.3d 433, 438 (7th Cir. 2000) (reversing where ALJ failed to address the VE's testimony that the forklift driver position required "frequent to constant" use of plaintiff's right ankle to operate the foot controls, considering his most recent x-ray indicated mild to moderate degeneration in that precise area).

To summarize, if the ALJ applied a freeze and plaintiff had until September 2019 to establish disability, the ALJ would have recognized arthritis among plaintiff's impairments and accounted for plaintiff's arthritis in crafting her RFC and identifying jobs plaintiff could perform, jobs that likely would not require frequent handling and fingering. Therefore, the Court cannot find the ALJ's error in failing to extend plaintiff's DLI, based on plaintiff's established disability period, harmless.

7

### II. The ALJ's Conclusions Regarding Plaintiff's Transferable Skills Are Not Supported by Substantial Evidence.

Plaintiff also alleges the ALJ made several errors in concluding plaintiff could perform other jobs: (a) failing to find plaintiff acquired skills from past work before concluding she could perform the skilled positions of general and dividend clerk during the August 14, 2012, through June 10, 2014 timeframe; and (b) failing to explain what the work skills of the identified occupations were, how plaintiff's acquired skills would transfer to those occupations, and why minimal vocational adjustment would be required considering plaintiff's advanced age and medical impairments, during the December 13 to December 31, 2017 timeframe. [15] 11-13. The Commissioner responds any error in finding plaintiff could perform semiskilled and skilled work, without a finding of transferable skills is harmless because plaintiff had the same RFC both before and after she turned 55 years old in June 2014. [20] 7-8. The Commissioner explains that given plaintiff had the same RFC, she could perform the identified jobs after she turned 55 years old that she could perform before she turned 55 years old. [*Id.*]. To plaintiff's other transferable skills arguments, the Commissioner responds that plaintiff offers no contradictory vocational evidence that the skills identified by the VE were not transferable to the jobs the VE identified or that there was more than little, if any, vocational adjustment required. [*Id.*] 9. Plaintiff replies the ALJ's errors are not harmless because for the period post-dating June 12, 2014, plaintiff being 55 years or older and limited effectively to sedentary work, "there must be very little if any vocational adjustment required" to find plaintiff has "skills transferable to sedentary occupations," like those the ALJ identified. [15] 13 (citing Social Security Ruling ("SSR") 82-41(4)(c)).

"'Transferability' is defined as 'applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semiskilled jobs.'" *Key v. Sullivan*, 925 F.2d 1056, 1062 (7th Cir. 1991) (quoting SSR 1982(2)(b) (1979); 20 C.F.R. § 404.1568(d)). To find a claimant's skills transferable to other jobs, an ALJ must determine whether the skilled activities that the claimant performed in her past work can be used to "meet the requirements of other jobs, based on the similarity of the occupationally significant work that both jobs require." *Benoit v. Colvin*, 13-CV-4482, 2016 WL 1073050, at *6 (N.D. Ill. Mar. 17, 2016) (citing 20 C.F.R. § 404.1568(d)). Specifically, the "ALJ must identify the claimant's acquired work skills and the specific occupations to which the acquired work skills are transferable." *Id.* "The transferability of skills is a determination entrusted to the ALJ, not the VE" and courts "review the actual reasons given by the ALJ without speculating about what the ALJ might have considered." *Abbott v. Astrue*, 391 Fed. App'x 554, 558-559 (7th Cir. 2010) (internal citation omitted).

8

Here, the ALJ concluded that plaintiff could perform other jobs during several distinct periods. In the first period, August 14, 2012, through June 10, 2014, the ALJ concluded plaintiff could perform the semiskilled position of general clerk and skilled position of dividend clerk. [14-11] 1027. However, in coming to this conclusion the ALJ's decision did not list any of plaintiff's acquired skills or explain whether those skills were similar to those required for either the skilled or semiskilled positions the ALJ identified. [*Id.*]. This was error as the ALJ was required to identify plaintiff's specific work skills before concluding plaintiff could perform these positions. *See Abbott*, 391 Fed. App'x at 558 (reversing where ALJ did not list the specific skills associated with claimant's past relevant work, but only stated that claimant's past relevant work was skilled and claimant had transferable work skills); *see also Key*, 925 F.2d at 1062-63 (same).

Moving to the final period, December 13, 2017, through December 31, 2017, the ALJ found that plaintiff's work skills (which she identified as verbal recording, record keeping, use of office equipment, and verifying information) were transferable to other occupations such as being a time keeper, pricer, or contact clerk, and that plaintiff would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry. [14-11] 1037-38. This finding was based exclusively on the VE's testimony. [*Id.*]. The ALJ failed to explain in any detail the required work skills of the identified positions, and therefore, her conclusion that plaintiff's skills were transferable and that minimal vocational adjustment would be required is unsupported by substantial evidence. *See Benoit*, 2016 WL 1073050, at *6 (citing *Abbott*, 391 Fed. App'x at 558). While the record may provide substantial evidence to support the ALJ's conclusion that "very little, if any" vocational adjustment would be required of plaintiff, the Court cannot make this assumption based on the VE's testimony, which also did not explain in any depth the degree of vocational adjustment required. *Daniels v. Astrue*, 854 F.Supp.2d 513, 527 (N.D. Ill. 2012); *see also Draegert v. Barnhart*, 311 F.3d 468, 475-77 (2d Cir. 2002) (holding that specific findings on transferable skills are necessary even where the ALJ relies on the testimony of a VE); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224-25 (9th Cir. 2009) (same). Accordingly, and considering that this matter is already being remanded, the Court further remands this case so that the ALJ may reconsider her findings regarding vocational adjustment. *Id.*

For that reason, as well as the other reasons discussed above, the case must be remanded.

9

## Conclusion

The decision of the SSA is reversed, and in accordance with the fourth sentence of 42 U.S.C. § 405(g), this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

*[signature: Heather K. McShain]*

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: May 1, 2023**